## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **MARNITA SHEPERD** | * | **CIVIL ACTION NO.: 3:18-cv-01091** |
| | * | |
| **VERSUS** | * | |
| | * | |
| | * | |
| **SANDERS E. WILLIS, JR.;** | * | |
| **GOVERNMENT EMPLOYEES** | * | |
| **INSURANCE COMPANY;** | * | **JUDGE JOHN W. DeGRAVELLES** |
| **AVIS BUDGET CAR RENTAL, LLC &** | * | |
| **JAMES RIVER INSURANCE** | * | |
| **COMPANY** | * | **MAGISTRATE RICHARD L.** |
| | * | **BOURGEOIS, JR.** |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

### MEMORANDUM IN SUPPORT OF *DAUBERT* MOTION, OR ALTERNATIVELY, MOTION *IN LIMINE* TO EXCLUDE OPINIONS OF LACY H. SAPP, PH.D. AND DR. G. RANDOLPH RICE

**MAY IT PLEASE THE COURT:**

Defendant, James River Insurance Company, ("James River"), respectfully submits the following Memorandum in Support of its *Daubert* Motion, or alternatively, Motion *in Limine*. This matter is currently scheduled for a jury trial to commence on January 4, 2021. Plaintiff, Marnita Sheperd, has retained Lacy H. Sapp as her life care planning expert and Dr. G. Randolph Rice as her expert economist. Sapp and Dr. Rice have offered unreliable opinions relative to future medical treatment of Plaintiff's lumbar spine and cervical spine. Pursuant to *Daubert*, Sapp and Rice's opinions are unreliable and should be excluded at trial. For the following reasons, James River prays that this Honorable Court grant its *Daubert* Motion and exclude the speculative opinions of Plaintiff's expert witnesses, Ms. Sapp and Dr. Rice.

I.     **Factual Background**

Plaintiff, Marnita Sheperd, alleges that she sustained personal injuries following a motor vehicle accident that occurred on or about November 23, 2017.[1] Plaintiff alleges that she was operating her vehicle southbound in the left lane of Staring Lane at or near its intersection with High Point Road in the Parish of East Baton Rouge, Louisiana, when she was struck by a vehicle operated by Sanders E. Willis, Jr.[2] As a result of the accident, Plaintiff alleges personal injuries and economic damages.[3] Plaintiff named James River Insurance Company, Avis Budget Car Rental, LLC, Government Employees Insurance Company ("GEICO"), and Willis as defendants.[4] Plaintiff alleges she sustained personal injuries to her back and neck, and Plaintiff has since undergone physical therapy, cervical injections and a radiofrequency ablation procedure with Dr. Sean Graham, and cervical fusion surgery with Dr. Samer Shamieh.

A.  **Expert Report of Lacy H. Sapp**

Plaintiff has retained Lacy Sapp at Stokes & Associates, Inc., for the purposes of preparing a Life Care Plan.[5] In preparation of her report, Sapp reviewed various medical records regarding Plaintiff's treatment, interviewed Plaintiff, and consulted with Dr. Graham and Dr. Shamieh.[6] During the consultation with Sapp, Dr. Graham opined that Plaintiff "will more probably than not need bilateral lumbar radiofrequency ablations every nine to twelve months for a duration of five to ten years."[7] He further opined that Plaintiff will likely need to be evaluated by a spine surgeon to determine if she is a candidate for surgery.[8] As to Plaintiff's cervical spine, Dr. Graham reported

---

[1] *See* Exhibit A, Petition for Damages.
[2] *Id.*
[3] *Id.*
[4] *Id.*
[5] *See* Exhibit B, Lacy H. Sapp, Ph.D. Life Care Plan Report.
[6] *Id.*
[7] *Id.* at 5.
[8] *Id.*

2

that Plaintiff obtained minimal relief from cervical procedures and will likely need medication management, including pain management follow-up visits, medications, and urine drug screens through life expectancy.[9]

Dr. Shamieh noted that Plaintiff will likely need four additional post-operative spine surgeon visits, with x-rays at each visit, as well as post-operative physical therapy.[10] Dr. Shamieh further reported that Plaintiff will more probably than not need an adjacent level cervical fusion in approximately nineteen years following the cervical fusion performed on May 7, 2019.[11] He further opined that she will likely need pre-operative laboratory testing and diagnostic imaging, as well as post-operative spine surgeon follow-up visits, physical therapy, and medications.[12] As to her lumbar spine, Dr. Shamieh recommended that Plaintiff continue to undergo radiofrequency ablations with Dr. Graham.[13]

### B. Expert Report of Dr. G. Randolph Rice

Plaintiff has also retained Dr. G. Randolph Rice, an expert economist, to provide economic calculations regarding the present value of Ms. Sapp's life care plan.[14] Dr. Rice concludes the following present values based on Ms. Sapp's calculations:

**I.    Surgeries/Procedures**

   a. Adjacent Level Cervical Fusion - $134,215.00
   b. Bilateral Lumbar RFA's - $56,555.00 - $147,043.00

**II.   Future Medical Care Routine**

   a. Spine Surgeon
       i. Current/Post-Op (Cervical) - $1,400.00
       ii. +19 years/Post-Op (Adjacent Level) - $2,100.00

---

[9] *Id.*
[10] *Id.*
[11] *Id.*
[12] *Id.*
[13] *Id.*
[14] *See* Exhibit C, Report of Dr. G. Randolph Rice.

3

     iii. Consultation - $350.00

   b. Pain Management Physician
     i. $21,424.00

**III. Projected Evaluations**

  a. Physical Therapy
    i. Current/Post-Op (Cervical) - $120.00-$170.00
    ii. +19 yrs/Post-Op (Adjacent Level) - $109.00-$155.00
  b. Chiropractor - $15,840.00-$21,600.00

**IV. Laboratories/Diagnostics**
  a. +19yrs/Post-Op (CBC/CMP/etc.) - $445.00-$993.00
  b. Cervical x-ray/current - $2,616.00-$3,812.00
  c. Cervical x-ray/+19yrs - $3,924.00-$5,718.00
  d. Cervical MRI - $1,336.00-$3,806.00
  e. Lumbar MRI - $2,962.00 - $7,134.00
  f. Urine Drug Screen - $6,106.00-$14,595.00

**V. Medications**
  a. Percocet/Dulcolax/Flexeril - $1,022.00-$1,536.00
  b. Gabapentin - $13,209.00-$25,790.00

**VI. Total** - $267,195.00 to $401,268.00.[15]

In preparation of his calculations, Dr. Rice relies on Ms. Sapp's calculations in her life care plan report.

### C. Deposition Testimony of Dr. Sean Graham

Dr. Graham is Plaintiff's pain management physician. Dr. Graham testified that he began treating Plaintiff after she was referred for treatment by Dr. Sonnier.[16] He further testified that, prior to his initial evaluation of Plaintiff, he did not review prior medical records, other than MRIs ordered by Dr. Sonnier, to determine her treatment before her first visit.[17] Dr. Graham testified that Plaintiff began treatment on March 15, 2018, and presented with complaints of neck and lower

---

[15] *Id.*
[16] *See* Exhibit D, Deposition of Dr. Sean Graham, at pg. 10.
[17] *Id.*

4

back pain stemming from a motor vehicle accident that occurred on November 23, 2017.[18] As to Plaintiff's cervical spine MRI findings, Dr. Graham agreed that most of the positive findings on her MRI were degenerative in nature.[19] He further testified that Plaintiff did not provide a history of prior neck or back pain, and further, did not indicate that she was involved in an automobile accident one month before her evaluation in February 2018.[20] Dr. Graham further agreed that Plaintiff's clinical history noted in a June 13, 2012 medical record from LSU Health Center evidenced a prior history of cervical spine pain[21] as well as evidence of prior degenerative issues in her cervical spine.[22] Dr. Graham then recommended a cervical epidural steroid injection.[23] Plaintiff reported minimal relief from the injection,[24] and Dr. Graham later recommended a repeat cervical injection.[25]

      Plaintiff then reported 60% relief following the repeat injection[26] and recommended a left C4-5, C5-6, and C6-7 medial branch block.[27] Following the medial branch blocks on August 29, 2018, Plaintiff reported 60% temporary improvement in cervical pain, and Dr. Graham then scheduled a radiofrequency ablation ("RFA") procedure.[28] Following the procedure, Plaintiff reported increased pain in her neck and left shoulder.[29] Dr. Graham later recommended Plaintiff to a neurosurgeon, Dr. Scrantz, to undergo a surgical consultation to discuss anterior cervical

---

[18] *Id.* at 10-11.
[19] *Id.* at 13.
[20] *Id.* at 15.
[21] *Id.* at 16.
[22] *Id.*
[23] *Id.* at 18.
[24] *Id.*
[25] *Id.* at 19.
[26] *Id.*
[27] *Id.* at 20.
[28] *Id.* at 20-21.
[29] *Id.* at 21-22.

5

discectomy and fusion.[30] Plaintiff underwent the cervical fusion surgery on May 7, 2019 with Dr. Samer Shamieh.

As to Plaintiff's lumbar spine, Dr. Graham testified that he believed her lower back pain was likely related to the lumbar facet joints, L3-4 and L4-5, and he scheduled a medial branch block procedure at both levels in December 2018.[31] Following the procedure, Plaintiff reported immediate 100% improvement in her back pain.[32] Dr. Graham then scheduled an RFA for her lumbar spine, which was completed on January 18, 2019.[33] During Plaintiff's follow-up visit weeks later, Dr. Graham testified that Plaintiff reported more than 50% improvement in her lower back pain.[34] Based on the effectiveness of the lumbar RFA, Dr. Graham testified that he did not make any recommendations with respect to treatment of her lumbar spine.[35]

In terms of medical causation, Dr. Graham testified that he could not state, more probable than not, that Plaintiff's lumbar pain was caused by the subject accident.[36] Further, as to the February 2018 accident, Dr. Graham could not provide any testimony that Plaintiff sustained an aggravation of low back symptoms following the subsequent accident.[37] Dr. Graham agreed that surgical intervention for Plaintiff's lumbar spine is not warranted.[38] At the time of his consultation with Ms. Sapp, Dr. Graham testified that he did not have any information during that time as to Plaintiff's post-lumbar RFA progress.[39] Relative to Ms. Sapp's opinions regarding future spine

---

[30] *Id.* at 23.
[31] *Id.*
[32] *Id.* at 24.
[33] *Id.*
[34] *Id.*
[35] *Id.* at 25.
[36] *Id.* at 31.
[37] *Id.*
[38] *Id.* at 33-34.
[39] *Id.* at 35-36.

6

surgery, Dr. Graham testified that any opinions regarding a spine surgery referral or spine surgery would be speculative, given the five to ten year time frame.[40]

Dr. Graham further testified that Ms. Sapp's nine to twelve month recommendations as to the frequency of potential future lumbar RFAs should be extended based on Plaintiff's relief of at least sixteen to seventeen months following the initial RFA.[41] As to Plaintiff's lumbar RFAs and the potential need for future lumbar RFAs, Dr. Graham was unable to provide testimony that the procedures were caused or necessitated by the subject accident on November 23, 2017.[42] Importantly, Dr. Graham testified that he would modify several recommendations he previously provided to Ms. Sapp during the initial consultation.[43] Given the deposition testimony of Dr. Graham, Ms. Sapp and Dr. Rice's opinions are based on speculation regarding future medical treatment of Plaintiff's lumbar spine and incomplete information Plaintiff's prior medical history as to her cervical spine. For the foregoing reasons, Ms. Sapp and Dr. Rice's opinions should be deemed inadmissible at trial.

**II.      Law and Argument**

The testimony of an expert witness is governed by Rule 702 of the Federal Rules of Evidence, which states "a witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; b) the testimony is based on sufficient facts or data; c) the testimony is the product of reliable principles and methods; and d) the expert has reliably applied the principles and methods to the facts of the case."

---

[40] *Id.* at 36-37.
[41] *Id.* at 38-40.
[42] *Id.* at 46-47.
[43] *Id.* at 47-50.

7

"In *Daubert*, the Court identified a number of factors that are useful in analyzing reliability of an expert's testimony: 1) whether the theory has been tested; 2) whether the theory has been subject to peer review and publication; 3) any evaluation of known rates of error; 4) whether standards and controls exist and have been maintained with respect to the technique; and 5) general acceptance within the scientific community…In addition to the five factors laid out in *Daubert*, a trial court may consider other factors, such as 1) *whether the expert's opinion is based on incomplete or inaccurate data*; 2) whether the expert has unjustifiably extrapolated from an accepted premise to an unfounded conclusion; and 3) whether the expert has adequately accounted for alternative explanations."[44]

An expert witness must also provide testimony that abides by Fed. R. Evid. 403. This Rule permits a district judge to exclude relevant evidence if its probative value is substantially outweighed by the danger of "unfair prejudice, confusion of the issues, misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."[45] As the Supreme Court correctly noted, "[e]xpert evidence can be both powerful and quite misleading—because of this risk, the judge in weighing possible prejudice against probative forces under Rule 403 … exercises more control over experts than lay witnesses."[46] To this end, an expert opinion's "lack of reliable support may render it more prejudicial than probative, making it inadmissible under [Rule] 403."[47]

---

[44] *Waste Management of Louisiana, L.L.C. v. Parish,* 2015 WL 5798029 at *11 (E.D.La. Oct. 5, 2015) (emphasis added). *See also Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 592-94 (1993); *Black v. Food Lion Inc.*, 171 F.3d 308,313 (5th Cir. 1999); *Moore v. Ashland Chem. Inc*., 151 F.3d 269, 278-79(5th Cir. 1998).
[45] Fed. R. Evid. 403.
[46]*Brock v. Caterpillar, Inc*., 94 F.3d 220, 226 (6th Cir. 1996) citing *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579, 595, 113 S. Ct. 2786, 2798, 125 L. Ed. 2d 469 (1993).
[47] *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987).

A. **<u>Ms. Sapp's Life Care Plan Regarding Future Medical Treatment of Plaintiff's Cervical and Lumbar Spine Conflicts with Dr. Graham's Testimony and Should be Excluded Under *Daubert*.</u>**

As noted above, Ms. Sapp opines regarding Plaintiff's future medical treatment of Plaintiff's lumbar spine. According to Ms. Sapp, Plaintiff will require bilateral lumbar radiofrequency ablation procedures every 9 – 12 months for the next five to ten years based on Dr. Graham's initial recommendation.[48] At the time of his consultation with Ms. Sapp, Dr. Graham testified that he did not have any information during that time as to Plaintiff's post-lumbar RFA progress.[49] Relative to Ms. Sapp's opinions regarding future spine surgery, Dr. Graham testified that any opinions regarding a spine surgery referral or spine surgery would be speculative, given the five to ten year time frame.[50] Dr. Graham further testified that Ms. Sapp's nine to twelve month recommendations as to the frequency of future lumbar RFAs should be extended based on Plaintiff's relief of at least sixteen to seventeen months following the initial RFA.[51] Furthermore, Dr. Graham testified that if plaintiff's lumbar pain symptoms are still resolved after 2 years post-lumbar RFA, then more likely than not Plaintiff would not require any repeat lumbar RFAs in the future.[52]

Most significantly, Dr. Graham was unable to testify that Plaintiff's lumbar injections, lumbar RFA, and any potential future lumbar RFAs were caused or necessitated by the subject accident on November 23, 2017.[53] Given Dr. Graham's deposition testimony, Ms. Sapp's opinions and testimony as to Plaintiff's purported future treatment related to the lumbar spine are unreliable, speculative, and irrelevant under *Daubert*.

---

[48] *See* Exhibit B at pg. 6.
[49] *Id.* at 35-36.
[50] *Id.* at 36-37.
[51] *Id*. at 38-40.
[52] *Id.* at 43.
[53] *Id.* at 46-47.

9

In *Wilcox v. Max Welders, L.L.C.,* defendants filed a Motion *in Limine* to strike a report and testimony of the plaintiffs' life care expert.[54] The report was based off the treating physician's recommendation calling for 24-hour care for the rest of plaintiff's life.[55] Defendants argued that, in the treating physician's deposition, he acknowledged that he did not think he would need that time of care after 3-5 years.[56] The Eastern District of Louisiana found that there was no evidence to support the 24-hour care of plaintiff, and further, "the expert report and anticipated testimony regarding the cost of lifelong 24-hour supervision lack[ed] a sufficient basis in fact to support her expert opinion at the present time."[57] Therefore, the Motion *in Limine* was granted, and the life care planner's report and relevant testimony regarding plaintiff's future medical treatment was excluded.

Like *Wilcox*, James River anticipates that Ms. Sapp will offer testimony and a life care plan that is founded upon unreliable and speculative information. Dr. Graham's deposition testimony regarding Plaintiff's lumbar spine directly conflicts with Ms. Sapp's life care plan and his initial recommendations during the consultation. Ms. Sapp's plan is primarily based on the speculative opinions of Dr. Graham, which he provided to Ms. Sapp in an informal consultation prior to his deposition. Further, as to future medical treatment of Plaintiff's cervical spine, Ms. Sapp was not privy to Plaintiff's documented prior medical history of cervical complaints. Thus, Ms. Sapp's life care plan does not rest upon a reasonable medical probability, given Dr. Graham's inability to relate the potential need for future lumbar RFAs to the subject accident, Dr. Graham's testimony that surgical intervention of Plaintiff's lumbar spine is not warranted, and no references to

---

[54] *Wilcox v. Max Welders, L.L.C.,* 2013 WL 4517907, at *1 (E.D. La. Aug. 22, 2013).
[55] *Id.*
[56] *Id.*
[57] *Id.*

Plaintiff's prior medical history of cervical complaints. Accordingly, Ms. Sapp's testimony and life care plan should be excluded and deemed inadmissible at trial under *Daubert*.

**B. Because Dr. Rice relies solely on Ms. Sapp's unreliable life care plan, his testimony and opinion should be excluded at trial.**

Dr. Rice relies solely on Ms. Sapp's life care plan regarding Plaintiff's future medical care costs. As discussed above, Dr. Graham testified that he cannot relate the Plaintiff's potential need for future lumbar RFAs to the subject accident,[58] and that he could not state, more probable than not, that Plaintiff's lumbar pain was caused by the subject accident.[59] Dr. Rice does not rely on the opinions of Plaintiff's treating physicians in rendering his report; yet, he calculates the present value of Ms. Sapp's life care plan. Given the deposition testimony of Dr. Graham, Dr. Rice's calculations are based on inaccurate and speculative data contained in Ms. Sapp's report and should also be excluded under *Daubert*.

### III. Conclusion

For the foregoing reasons, the opinions of Dr. Rice regarding the present value of the life care plan and Ms. Sapp's opinions and calculations regarding future medical care are based on unreliable and inaccurate data and should be deemed inadmissible at trial under *Daubert*. By allowing speculative opinions, James River will be severely prejudiced, as these opinions could wrongfully influence a jury. Accordingly, James River Insurance Company prays that this Honorable Court enter an Order excluding the expert testimony and expert reports of Lacy H. Sapp and Dr. G. Randolph Rice at trial.

---

[58] *Id.* at 46-47.
[59] *Id.* at 31.

11

Respectfully submitted,

*/s/Ebony S. Morris*_____
LYON H. GARRISON, Bar No. 19591, T.A.
KEVIN F. TRUXILLO, Bar No. 30769
EBONY S. MORRIS, Bar No. 35929
GARRISON, YOUNT, FORTE & MULCAHY, L.L.C.
909 Poydras Street, Suite 1800
New Orleans, Louisiana 70112
Telephone: (504) 527-0680
Facsimile: (504) 527-0686
*Counsel for Defendant,*
*James River Insurance Company*

## CERTIFICATE OF SERVICE

I hereby certify that on the 15th day of June, 2020, a copy of the foregoing was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to all known counsel of record by operation of the court's electronic system.

*/s/Ebony S. Morris*_____
EBONY S. MORRIS, Bar No. 35929