UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

MARNITA SHEPERD

VERSUS

SANDERS E. WILLIS, JR., ET AL

CIVL ACTION

NO.:  18-1091-JWD-RLB

### RULING ON JAMES RIVER INSURANCE COMPANY'S *DAUBERT* MOTION, OR, ALTERNATIVELY, MOTION *IN LIMINE* TO EXCLUDE OPINIONS OF LUCY H. SAPP, PH.D. AND/OR DR. G. RANDOLPH RICE

Before the Court is defendant James River Insurance Co.'s ("Defendant" or "James River") *Daubert* Motion, or, Alternatively, Motion *In Limine* to Exclude Opinions of Lucy H. Sapp, Ph.D. and/or Dr. G. Randolph Rice. (Doc. 24.)  It is opposed by plaintiff Marnita Sheperd ("Plaintiff" or "Sheperd"). (Doc. 26.) The Court has carefully reviewed the motion and associated memoranda, and, for the following reasons, the motion is denied.

I.     BACKGROUND

This suit for personal injury damages arises out of a motor vehicle accident which occurred in East Baton Rouge Parish on November 23, 2017. (Doc. 24-1 at 2.) For purposes of this motion, the facts of the accident are unimportant. Plaintiff claims to have suffered serious personal injuries in this accident. (*Id*.) Plaintiff underwent physical therapy, cervical injections and a radiofrequency ablation procedure with Dr. Sean Graham. (*Id*.) She underwent a cervical fusion surgery with Dr. Samer Shamieh. (*Id*.)

Plaintiff retained vocational rehabilitation expert Lucy Sapp ("Sapp") and expert economist G. Randolph Rice ("Rice") to assist in the assessment and calculation of Plaintiff's

1

damages. Sapp prepared a life care plan which outlined her need for and cost of future medical care and procedures. (Doc. 24-4.) Rice prepared an economic analysis of the present value of the cost of those medical procedures and medical care based on the information provided by Sapp. (Doc. 24-5)

## II.     ARGUMENTS OF THE PARTIES

In preparing her report, Sapp reviewed Plaintiff's medical records and interviewed both Dr. Graham and Dr. Shamieh. (Doc. 24-1 at 2.) During Sapp's meeting with Graham, Graham told Sapp that Plaintiff "will more probably than not need bilateral lumbar radiofrequency ablations every nine to twelve months for a duration of five to ten years." (Doc. 24-1 at 2, quoting Exhibit B, Doc. 24-4, Sapp's report.) With respect to her cervical issues, Graham told Sapp that Plaintiff will likely need medication management, including pain management, follow-up visits, medications, and urine drug screens throughout her life expectancy. (*Id.* at 3.)

According to Defendant, Dr. Shamieh told Sapp that Plaintiff will likely need four additional postoperative spine surgeon visits, with x-rays at each visit, as well as postoperative physical therapy. (*Id.*) In addition, Plaintiff will more probably than not need an adjacent level cervical fusion in approximately 19 years following the cervical fusion performed on May 7, 2019. (*Id.*) He recommended that Plaintiff continue to undergo radiofrequency ablations with Dr. Graham regarding the lumbar spine. (*Id.*)

After Sapp's interview with Dr. Graham, Graham's deposition was taken. Defendant states that, in that deposition, Graham testified that Plaintiff did not provide a history of prior neck or back pain and did not indicate she was involved in an automobile accident one month before her evaluation in February 2018. (Doc. 24-1 at 5.) He testified that her medical records showed cervical spine pain complaints before the automobile accident in question. (*Id.*) Graham

2

stated that he could not say, more probably than not, that her lumbar pain was caused by the subject accident and could not opine that she sustained an aggravation of low back symptoms following the subsequent accident. (*Id*. at 6.) He stated that surgical intervention for the plaintiff's lumbar spine was not warranted. (*Id*.) He testified that any opinions regarding future spine surgery would be speculative. (*Id*. at 6-7.)

Defendant argues that Graham's opinion given to Sapp in her interview and upon which she rendered her opinions about future medical care changed dramatically in his deposition such that her report and opinions no longer have an adequate foundation and must be excluded. (*Id*. at 9-11.) He concludes:

> Ms. Sapp's plan is primarily based on the speculative opinions of Dr. Graham, which he provided to Ms. Sapp in an informal consultation prior to his deposition. Further as to future medical treatment of Plaintiff's cervical spine, Ms. Sapp was not privy to Plaintiff's documented prior medical history of cervical complaints. Thus, Ms. Sapp's life care plan does not rest upon a reasonable medical probability, given Dr. Graham's inability to relate the potential need for future lumbar RFAs to the subject accident, Dr. Graham's testimony that the surgical intervention is not warranted, and no reference to Plaintiff's prior medical history of cervical complaints. Accordingly, Ms. Sapp's testimony and life care plan should be excluded and deemed inadmissible at trial under *Daubert*.

(*Id*. at 10-11.)

James River concludes that because Rice's economic calculations rest entirely on Sapp's discredited opinions, Rice's opinions are likewise and necessarily unreliable and must also be excluded. (*Id*. at 11.)

Plaintiff concedes that Graham's opinion changed in some respects from the time of his consultation with Sapp to the time of his deposition and that "this will require the opinions of Dr. Sapp and Dr. Rice to be modified but would not be grounds for entirely excluding their opinions, as modified, at the trial of this matter." (Doc. 26 at 4-5.)

Second, Plaintiff points out that Sapp's testimony did not rely exclusively on her consultation with Dr. Graham but was also based on Plaintiff's deposition, her meeting with surgeon Dr. Shamieh, and her treatment with other providers as reflected in Plaintiff's medical records. (*Id*. at 6.) The fact that a part of the underlying data upon which Sapp relied changed does not gainsay the other foundational information and does not justify excluding her entire report.

Third, Plaintiff maintains that issues regarding an expert's underlying bases and sources of his opinion affect the weight rather than the admissibility of that testimony. (*Id*. at 5, pointing the Court to *Anders v. Hercules Offshore Services, LLC* (but providing no citation)). Finally, addressing the causation issue raised by Defendant, Plaintiff points out that the causation link between the subject accident and Plaintiff's damages was not only provided by Graham but also her treating surgeon, Dr. Shamieh, and even Defendant's consulting expert, Dr. Najeeb Thomas. (*Id.* at 6-7.)

### III.    STANDARD

Pursuant to Federal Rule of Evidence 702, "a witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise" if the rule's preconditions are met.

Defendant's motion is a *Daubert* challenge based principally on the alleged failure of Sapp and Rice to have an adequate factual foundation for their opinions. *See Daubert v. Merrell Dow Pharmaceuticals, Inc*. 509 U.S. 579 (1993). When *Daubert* is invoked, a district court may, but is not required to, hold a hearing at which the proffered opinion may be challenged. *Carlson v. Bioremedi Therapeutic Sys., Inc*., 822 F.3d 194, 201 (5th Cir. 2016). However, when no hearing is held, "a district court must still perform its gatekeeping function by performing some

4

type of *Daubert* inquiry." *Id*. "At a minimum, a district court must create a record of its *Daubert* inquiry and 'articulate its basis for admitting expert testimony.'" *Id.* (quoting *Rodriguez v. Riddell Sports, Inc.*, 242 F.3d 567, 581 (5th Cir. 2001)).

The role of the trial court is to serve as the gatekeeper for expert testimony by making the determination of whether the expert opinion is sufficiently reliable. As the Fifth Circuit has held:

> [W]hen expert testimony is offered, the trial judge must perform a screening function to ensure that the expert's opinion is reliable and relevant to the facts at issue in the case. *Daubert* went on to make "general observations" intended to guide a district court's evaluation of scientific evidence. The nonexclusive list includes "whether [a theory or technique] can be (and has been) tested," whether it "has been subjected to peer review and publication," the "known or potential rate of error," and the "existence and maintenance of standards controlling the technique's operation," as well as "general acceptance." The [Supreme] Court summarized:
>
> The inquiry envisioned by Rule 702 is, we emphasize, a flexible one. Its overarching subject is the scientific validity and thus the evidentiary relevance and reliability-of the principles that underlie a proposed submission. The focus, of course, must be solely on principles and methodology, not on the conclusions that they generate.

*Watkins v. Telsmith, Inc.*, 121 F.3d 984, 988-89 (5th Cir. 1997) (internal citations omitted).

Cases following *Daubert* have expanded upon these factors and explained that *Daubert*'s listing is neither all-encompassing nor is every factor required in every case. *See, e.g.*, *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 142 (1997); *Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir. 2004). Indeed, courts may look to other factors. *Joiner*, 522 U.S. at 146.

As this Court has explained:

> The admissibility of expert testimony is governed by Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, which provide that the court serves as a gatekeeper, ensuring all scientific testimony is relevant and reliable. This gatekeeping role extends to all expert testimony, whether scientific or not. Under Rule 702, the court must consider three primary requirements in determining the admissibility of expert testimony: 1) qualifications of the expert witness; 2) relevance of the testimony; and 3) reliability of the principles and methodology upon which the testimony is based.

5

*Fayard v. Tire Kingdom, Inc.*, No. 09-171-BAJ-SCR, 2010 WL 3999011, at *1 (M.D. La. Oct. 12, 2010) (internal citations omitted) (citing *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999)).

This Court has broad discretion in deciding whether to admit expert opinion testimony. *See, e.g.*, *Joiner*, 522 U.S. at 138-39 (appellate courts review a trial court's decision to admit or exclude expert testimony under *Daubert* under the abuse of discretion standard); *Watkins*, 121 F.3d at 988 ("District courts enjoy wide latitude in determining the admissibility of expert testimony."); *Hidden Oaks Ltd. v. City of Austin*, 138 F.3d 1036, 1050 (5th Cir. 1998) ("Trial courts have 'wide discretion' in deciding whether or not a particular witness qualifies as an expert under the Federal Rules of Evidence.").

"Notwithstanding *Daubert*, the Court remains cognizant that 'the rejection of expert testimony is the exception and not the rule.'" *Johnson v. Samsung Elecs. Am., Inc.*, 277 F.R.D. 161, 165 (E.D. La. 2011) (citing Fed. R. Evid. 702 advisory committee note to 2000 amendment). Further, as explained in *Scordill v. Louisville Ladder Grp., L.L.C.*:

> The Court notes that its role as a gatekeeper does not replace the traditional adversary system and the place of the jury within the system. As the *Daubert* Court noted, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." The Fifth Circuit has added that, in determining the admissibility of expert testimony, a district court must defer to "the jury's role as the proper arbiter of disputes between conflicting opinions. As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration."

No. Civ. A-02-2565, 2003 WL 22427981 at *3 (E.D. La. Oct. 24, 2003) (Vance, J.) (internal citations omitted) (relying on, among others, *Rock v. Arkansas*, 483 U.S. 44, 61 (1987), and

6

*United States v. 14.38 Acres of Land, More or Less Sit. in Leflore County, Miss.*, 80 F.3d 1074, 1077 (5th Cir. 1996)).

The Supreme Court has recognized that not all expert opinion testimony can be measured by the same exact standard. Rather, the *Daubert* analysis is a "flexible" one, and "the factors identified in *Daubert* may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony." *Kumho*, 526 U.S. at 150, *cited with approval in Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 244 (5th Cir. 2002).

## IV. DISCUSSION

Plaintiff concedes that some of Graham's opinions, upon which Sapp relied, at least in part, changed from the time of his meeting with Sapp to the time of his deposition. But, as Plaintiff correctly points out, Sapp did not rely exclusively on Graham in reaching her conclusions. A review of her report shows that she reviewed 14 sets of medical records, answers to interrogatories, and the deposition of Plaintiff. (Doc. 24-4 at 1-2.) In addition to meeting with Dr. Graham, she also met with Dr. Shamieh and many of her recommendations for future medical expenses flow directly from Dr. Shamieh. (*Id*. at 6-9.) Thus, the Court finds that it would not be proper to preclude her testimony in its entirety at trial.

As to that part of her report on which she relies entirely on Dr. Graham, Defendant is free to cross examine Sapp based on what appears to be Graham's changed opinion. "As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration." *United States v. 14.38 Acres of Land*, 80 F.3d at 1077 (quoting *Viterbo v. Dow Chemical Co.*, 826 F.2d 420, 422 (5th Cir. 1987)); *see also Imperial Trading Co. v. Travelers Prop. Cas. Co. of*

7

*Am.*, No. 06-4262, 2009 WL 2356292, at *3 (E.D. La. July 28, 2009). Furthermore, "[m]atters left for the jury's consideration include the alleged miscalculations, erroneous assumptions, and inconsistencies that plaintiffs object to." *Imperial Trading*, 2009 WL 2356292, at *3 (citing *Southwire Co. v. J.P. Morgan Chase & Co.*, 528 F. Supp.2d 908, 935 (W.D. Wis. 2007)). Here, Defendant's attack goes to the weight, not admissibility, of Sapp's testimony and, no doubt, will be the subject of vigorous cross-examination by counsel for Defendant which is where the sufficiency of this testimony should properly be tested.

Furthermore, it appears that Plaintiff intends to obtain revised reports based on Graham's changed opinions. (Doc. 26 at 4-5.) ("[T]his will require the opinions of Dr. Sapp and Dr. Rice to be modified but would not be grounds for entirely excluding their opinions, as modified, at the trial of this matter.") At a September 23, 2020 status conference, the Court ordered Plaintiff to provide the updated reports within two weeks and Defendant was given 30 days thereafter to supply updated reports from his vocational rehabilitation expert and economist if his client felt the need to file updated reports. The Court advised the parties that, if either side felt the need to take updated depositions from the experts based on their new reports, a motion requesting same would need to be filed and the Court would consider it.

As to the issue of causation, Plaintiff is correct that Dr. Graham was not the only physician who opined on this issue. More importantly, however, neither Sapp nor Rice expressed an opinion on the issue of whether the subject accident caused Plaintiff's injury or aggravated a preexisting condition nor could they, since neither is qualified to give such an opinion. That is the province of the physicians. Defendant's motion in this regard is also denied.

V.    **CONCLUSION**

For the foregoing reasons, James River's *Daubert* Motion, or, Alternatively, Motion *In Limine* to Exclude Opinions of Lucy H. Sapp, Ph.D. and/or Dr. G. Randolph Rice, (Doc. 24), is DENIED.

Signed in Baton Rouge, Louisiana, on September 25, 2020.

                                                **JUDGE JOHN W. deGRAVELLES**
                                                **UNITED STATES DISTRICT COURT**
                                                **MIDDLE DISTRICT OF LOUISIANA**